# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANTHONY WILLIAMS, BOP #05963-122, | ) CIV. NO. 1:18-cv-00336 DKW-RLP |
| | ) |
| | ) ORDER DISMISSING COMPLAINT |
| Plaintiff, | ) WITH LEAVE TO AMEND |
| | ) |
| vs. | ) |
| | ) |
| WARDEN KOBAYASHI, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

Before the court is pro se Plaintiff Anthony Williams' prisoner civil rights complaint. ECF No. 1. Williams is a federal pretrial detainee incarcerated at the Federal Detention Center, Honolulu (FDC-Honolulu).[1] Williams brings this suit "on behalf of himself and all inmates housed in FDC Honolulu." *Id.*, PageID #1. He alleges that FDC-Honolulu officials[2] violated his civil rights regarding his placement in administrative segregation on two occasions on or about February 14 and May 7, 2018, pending investigation for disciplinary charges. Williams has paid the costs of this suit and is not proceeding in forma pauperis.

---

[1] Williams is representing himself in *United States v. Williams*, No. 1:17-cr-00101-LEK (D. Haw. 2017), with Lars R. Erickson, Esq., acting as standby counsel.

[2] Williams names FDC-Honolulu Warden H. Kobayashi, Associate Wardens Kyle Olsen and Annelizabeth Card, and Captain Jeffrey Dixon as Defendants in their official and individual capacities (Defendants).

For the following reasons, Williams' Complaint is DISMISSED for failure to state a claim for relief.  *See* 28 U.S.C. § 1915A(a-b).  Williams may file an amended pleading on or before November 27, 2018, as limited below.

## I.  SCREENING

Because Williams is a prisoner seeking relief against government officials, the court must screen his Complaint pursuant to 28 U.S.C. § 1915A(a).  Claims that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed.  *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing dismissal under § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing dismissal under § 1915A(b)).

Section 1915 screening involves the same standard of review as that under Federal Rule of Civil Procedure 12(b)(6).  *See Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (screening under § 1915A(b)).  That is, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

Rule 12(b)(6) is read in conjunction with Rule 8(a).  *Zixiang Li v. Kerry*, 710 F.3d 995, 998-99 (9th Cir. 2013).  Under Rule 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but a complaint must allege enough facts to provide both "fair notice" of the claim asserted and "the grounds upon which [that claim] rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & n.3 (2007) (citation and quotation marks omitted); *see also Iqbal*, 556 U.S. at 555 (stating Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").  The "mere possibility of misconduct" falls short of meeting this standard.  *Iqbal*, 556 U.S. at 555; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Pro se litigants' pleadings must be liberally construed, and all doubts should be resolved in their favor.  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  Leave to amend must be granted if it appears the plaintiff can correct the defects in the complaint.  *Lopez*, 203 F.3d at 1130.

//

//

//

//

## II.  BACKGROUND[3]

On February 14, 2018, Defendant Olsen charged Williams with threatening bodily harm against FDC-Honolulu officials in an email that he sent to prison staff.[4]  Williams was taken to the segregated housing unit (SHU), where he was held in solitary confinement for fifty-eight days while these charges were investigated. Williams alleges that he was unable to make phone calls to his standby defense attorney, family, and friends, his access to discovery in his criminal case was curtailed, and he was allowed only two to four hours in the law library daily without access to a printer in the SHU.  On April 12, 2018, Williams was found not guilty of threatening bodily harm at his disciplinary hearing, and he was returned to the general population on April 16, 2018.

On May 7, 2018, Williams and another inmate were involved in an altercation.  Williams says the other inmate assaulted him, and he acted in self-defense.  Officer Light used pepper spray to end the fight.  Williams was taken to the showers to wash off the pepper spray and the other inmate was taken to the hospital emergency room for treatment for his "severe injuries."  *Id.*, PageID #3.

---

[3]The court accepts Williams' facts as true and construes them in the light most favorable to him.  *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014) ("*Nordstrom I*").

[4]The email stated that prison officials were tampering with Williams' legal mail and that they "could lose their job or face jail time" if they continued.  Compl., ECF No. 1, PageID #2.

Williams was taken to the hospital to document his own injuries upon his request and rehoused in the SHU when he returned.

On May 24, 2018, a disciplinary hearing was held, and Williams was found guilty of fighting; he was sanctioned to eight days already served in the SHU. Williams argued that he should not be punished for defending himself, however, and the hearing officer agreed to postpone his decision until he reviewed surveillance footage of the incident. A new hearing was scheduled for May 31, 2018, but had not been held as of June 6, 2018, the date that Williams completed and signed his Complaint. Because Williams did not file the Complaint until September 5, 2018, three months after signing it, it is unclear how long he remained in the SHU.

Williams claims that during this second period in the SHU, he was denied: (1) email contact with attorneys, family, and friends; (2) visitation; (3) more than one phone call per month; (4) required periodic reviews of his SHU status; (5) hardcover legal books; and (6) television, newspapers, and "real" recreation. *Id.*, PageID #5. Williams says the food in the SHU is stale and "mostly inedible" because it is frozen and reheated, inmates have less access to the commissary, there are bugs in the showers, and his sink is moldy and abuts the toilet.

Williams alleges that his solitary confinement in the SHU constituted cruel and unusual punishment, interfered with the practice of his religion, and denied him due process in violation of the First, Fifth, Eighth, and Fourteenth Amendments. He suggests, but does not explicitly allege, that he was denied access to the courts. Williams states that he was unable to complete the Bureau of Prisons' (BOP) Administrative Remedy Procedure (ARP) before filing this suit because Defendants delayed responding to his grievances.

Williams seeks declaratory and injunctive relief, compensatory and punitive damages, court costs, and any other just relief.

## III. DISCUSSION

### A. 42 U.S.C. § 1983

Williams brings this action pursuant to 42 U.S.C. § 1983. To establish a claim under Section 1983, a plaintiff must demonstrate that: (1) the defendants deprived him "of a right secured by the Constitution and laws of the United States," and (2) that an individual "acting under color of state law" accomplished the deprivation. *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011). The central inquiry is whether the allegedly illegal actions are "fairly attributable to the State." *Lugar v. Edmondson Oil Co. Inc.*, 457 U.S. 922, 937 (1982). An action is fairly attributable to the state if: (1) the deprivation was

"caused by the exercise of some right or privilege created by the State or . . . by a person for whom the State is responsible;" and (2) "the party charged with the deprivation . . . may fairly be said to be a state actor." *Id.*

"[F]ederal officials acting under federal authority are generally not considered to be state actors" and "do not become 'state actors' unless '[t]he State has so far insinuated itself into a position of interdependence with . . . [the federal officials] that it must be recognized as a joint participant in the challenged activity.'" *Cabrera v. Martin*, 973 F.2d 735, 742 (9th Cir. 1992) (citations omitted). Nothing within the Complaint allows a plausible inference that these federal Defendants acted under color of state law. Williams' Complaint therefore fails to state a claim under Section 1983 and is DISMISSED with leave to amend.

**B.** ***Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics***

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), recognized an implied cause of action against federal actors in their individual capacity for violating a plaintiff's civil rights that is analogous to 42 U.S.C. § 1983. To state a *Bivens* claim for damages, a plaintiff must allege facts showing that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the alleged deprivation was committed by a federal actor. *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991).

The court declines to construe Williams' claims as brought under *Bivens*, however, because doing so would result in the dismissal of several of his claims. To enable Williams to determine whether he can effectively amend his pleading under *Bivens* or any other federal law, the court provides the following legal standards.[5]  *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (explaining that a court should briefly explain a pro se litigant's pleading deficiencies when dismissing a complaint with leave to amend).

## 1.    *Official Capacity Claims*

*Bivens* provides a cause of action against *individual* officers acting under color of federal law who are alleged to have acted unconstitutionally.  *Corr. Serv. Corp. v. Malesko*, 534 U.S. 61, 70 (2001); *Solida v. McKelvey*, 820 F.3d 1090, 1094 (9th. Cir. 2016).  Williams cannot allege colorable claims against Defendants in their official capacity under *Bivens*.

## 2.    *Vicarious Liability*

"Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each government – official defendant, through the

---

[5]Regardless of whether Williams can seek damages under *Bivens*, he may still seek declaratory or injunctive relief pursuant to 28 U.S.C. § 1331, assuming he otherwise states a claim.  *See Bell v. Hood*, 327 U.S. 678, 684 (1946) (recognizing the "jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution); *Simmat v. United States Bureau of Prisons*, 413 F.3d 1225, 1232 (10th Cir. 2005).

official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see also Jones v. Cmty. Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (stating even pro se litigants must "allege with at least some degree of particularity overt acts which defendants engaged in" to state a claim). Williams must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, and describe personal acts by each individual defendant which show a direct causal connection to a violation of specific constitutional rights. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Williams alleges Warden Kobayashi is "legally responsible for the operation of FDC and for the welfare of all inmates of the FDC," and Associate Warden Card and Captain Dixon were "overseer[s] and supervisor[s] over the welfare of all inmates of the FDC." Compl., ECF No. 1, PageID #2. The only Defendant Williams specifically identifies as personally involved with his claims is Associate Warden Olsen, who issued Williams' first disciplinary charge, regarding the allegedly threatening email. Williams' Complaint lacks any factual content showing that Kobayashi, Card, or Dixon personally participated in, directed, or caused him to suffer a constitutional injury. That is, he fails to explain what Kobayashi, Card, or Dixon were purportedly aware of, how they came about that

knowledge, or how they personally violated his constitutional rights through their "own misconduct."  *See Iqbal*, 556 U.S. at 677.  Williams' claims against Kobayashi, Card, and Dixon are based solely on their supervisory position, and he therefore fails to state a colorable *Bivens* claim against them.

### 3.    *Expansion of Bivens Remedies is Disfavored*

*Bivens* recognized an implied cause of action for damages against individual federal officials for violation of the plaintiff's Fourth Amendment right against unreasonable search and seizure.  403 U.S. at 396-97.  The Supreme Court has since extended *Bivens'* "implied cause of action" only twice, in *Davis v. Passman*, 442 U.S. 228, 248 (1979), and in *Carlson v. Green*, 446 U.S. 14, 20-25 (1980). *Davis* provided a *Bivens* remedy under the Fifth Amendment's Due Process Clause for gender discrimination in employment where no other remedy at law existed. *See* 442 U.S. at 245-49.  *Carlson* expanded *Bivens* to apply to the Eighth Amendment's Cruel and Unusual Punishments Clause for failure to provide adequate medical treatment to a prisoner.  446 U.S. at 20.  "Since *Carlson* [the Supreme Court has] consistently refused to extend *Bivens* liability to any new context or new category of defendants."  *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 67–68 (2001) (recognizing that *Bivens* claims are available only in very limited contexts).

The Court has recently "made clear that expanding the *Bivens* remedy is now a disfavored judicial activity." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (cautioning against recognizing *Bivens* claims in new contexts not already recognized by the Supreme Court) (internal quotation marks omitted); *see also Vega v. United States*, 881 F.3d 1146, 1152 (9th Cir. 2018) (declining to find a *Bivens* remedy for a former prisoner's First Amendment right-of-access to the court claim and Fifth Amendment due process claim).

*Ziglar* established a two-step test to determine whether a *Bivens* claim should proceed. 137 S. Ct. at 1857. First, a court must consider whether the claim at issue extends *Bivens* in a new context from previously established *Bivens* cases. *Id.* at 1859. A case presents a new context if it "is different in a meaningful way from previous *Bivens* cases" decided by the Supreme Court. *See id.* at 1859-60 (setting forth a "non-exhaustive list of meaningful differences supporting a new context).

Second, if the claim at issue presents *Bivens* in a new context, a court must then undertake a "special factors" analysis to determine whether "special factors counsel hesitation" before expanding *Bivens* to that new context. *Id.* at 1857. The "special factors" analysis must "concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs

and benefits of allowing a damages action to proceed. Thus, to be a 'special factor

counselling [sic] hesitation,' a factor must cause a court to hesitate before

answering that question in the affirmative."[6] *Id.* at 1857-58 (quoting *Carlson*, 446

U.S. at 18). "[I]f there is an alternative remedial structure present in a certain case,

that alone may limit the power of the Judiciary to infer a new *Bivens* cause of

action." *Ziglar*, 137 S. Ct. at 1858.

### 4.    *First Amendment Claims*

The Supreme Court has "never held that *Bivens* extends to First Amendment

claims," *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012), although it has

assumed so for analytical purposes. *See Wood v. Moss*, 572 U.S. 744, 134 S. Ct.

2056, 2067 (2014) ("[W]e have several times assumed without deciding that

*Bivens* extends to First Amendment claims."); *see also Gibson v. United States*,

781 F.2d 1334, 1342 (9th Cir. 1986) (permitting a retaliation claim under *Bivens*);

*Moss v. U.S. Secret Serv.*, 572 F.3d 962, 967 n.4 (9th Cir. 2009) (noting *Bivens*

extends to First Amendment damages claims). *Ziglar* places these opinions in

question.

_____

[6]*Ziglar* set forth a non-exhaustive list to consider when performing a special-factors
analysis: (1) the rank of the officer involved; (2) whether *Bivens* is being used as a vehicle to
alter an entity's policy; (3) the burden on the government if such claims are recognized; (4)
whether litigation would reveal sensitive information; (5) whether Congress has indicated that it
does not wish to provide a remedy; (6) whether there are alternative avenues of relief available;
and (7) whether there is adequate deterrence absent a damages remedy. 137 S. Ct. at 1860-63.

Williams alleges without any factual support that Defendants' "actions of depriving inmates of the practice of their religion is a violation of the inmates First Amendment rights."  Compl., ECF No. 1, PageID #6.  Even if *Bivens* could be expanded to this claim post-*Ziglar* and *Vega*, which is doubtful, Rule 8 requires more than this completely unsupported, conclusory accusation to state a claim.  *See Iqbal*, 556 U.S. at 555 (stating Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").  The court cannot infer even the possibility of misconduct based on this single statement.

And, to the extent that Williams suggests he has a right-of-access to the court claim, the Ninth Circuit has explicitly held that *Bivens* does not apply to such claims.  *See Vega*, 881 F.3d at 1153-54 (finding federal prisoner had adequate alternate remedies to redress his claims and citing *Reichle* for the proposition that a *Bivens* remedy has never been recognized for a First Amendment claim).[7]

### 5.    *Fifth Amendment Claims*

Williams alleges Defendants violated his right to due process pursuant to his two disciplinary charges and his resulting confinement in the SHU, and invokes the

---

[7]U.S. District Judge Leslie E. Kobayashi has also recently held that Williams has not been denied access to the court in *United States v. Williams*, 1:17-cr-00101 LEK.  *See* Sept. 5, 2018 Order, ECF No. 310 (concluding that Williams "has access to sufficient materials 'to prepare, serve and file whatever pleadings or other documents are necessary' to prepare his defense").

Fifth and Fourteenth Amendments as the source of these claims. Williams' due

process claims arise under the Fifth, not the Fourteenth Amendment.[8] *Castillo v.*

*McFadden*, 399 F.3d 993, 1002 n.5 (9th Cir. 2005) ("The Fifth Amendment

prohibits the federal government from depriving persons of due process by the

several States.").

a.      *Procedural Due Process*

*Vega* held that a federal prisoner's procedural due process claims arising out

of prison disciplinary charges present a new context under *Ziglar*. 881 F.3d at

1154. *Vega* then found that federal prisoners have adequate alternative means for

redressing these rights by seeking "'formal review of an issue relating to *any*

aspect of his . . . own confinement' under the Administrative Remedy Program

("ARP"), 28 C.F.R. § 542.10(a)," or "assistance of counsel [under] § 542.16(a),

appeal[ing] any adverse findings to the Regional Director, § 542.15(a), and then to

the FBOP's General Counsel." *Id.* (quoting *Malesko*, 534 U.S. 6174 (emphasis in

---

[8]The Due Process Clause protects against two types of governmental action: (1) "substantive due process" prevents the government from engaging in action that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty," and (2) "procedural" due process ensures that government action depriving a person of liberty is implemented in a fair manner. *See United States v. Salerno*, 481 U.S. 739, 746 (1987).

original)).  Because these remedies were adequate and sufficient, *Vega* held that the expansion of a *Bivens* remedy for these claims was prohibited.[9]  *Id.*

FDC-Honolulu officials received Williams' ARP initial grievances regarding his claims on or about May 15, 2018, with a response date of June 4, 2018.  *See* Ex. A, ECF No. 1-1.  On June 1, prison officials notified Williams that they would respond on or about June 24, 2018, which complies with the 20-day extension allotted by ARP § 542.18.  *See* Ex. B, ECF No. 1-2.  Williams, however, completed and signed his Complaint on **June 6, 2018**, well before this response was due.  It is unclear whether Williams received a response after that date and pursued the ARP remedies to their conclusion before he filed this action.  It is clear, however, that Williams has an alternative remedy, initiated that remedy, and prematurely raised these claims in this court.  Williams cannot state a colorable *Bivens* claim for damages regarding the alleged denial of procedural due process at his disciplinary hearings.

### b.  *Substantive Due Process: Cruel and Unusual Punishment*

Williams alleges Defendants violated his right to be free from cruel and unusual punishment by holding him in solitary confinement in the SHU for more

---

[9]*Vega* also stated that a federal prisoner can seek review of a disciplinary report under 28 C.F.R. § 541.7, or seek state law claims against the private defendants if applicable.

than thirty days.[10]  As a pretrial detainee, these claims arise under the substantive

due process clause of the Fifth Amendment.  *See Castillo*, 399 F.3d at 1002 n.5;

*Hawk v. Two USM's Names Unknown*, 2017 WL 3261460 (D. Mont. July 10,

2017), *report and recommendation adopted*, 2017 WL 3259646 (D. Mont. July 31,

2017) .

These claims appear to present a new *Bivens* context.  *See Vega*, 724 F.

App'x at 539 (finding that the plaintiff's "Fifth Amendment due process claims"

presented a new *Bivens* context); *Ziglar*, 137 S. Ct. at 1859 (stating that a new

*Bivens* context will arise if "the case is different in a meaningful way from

previous *Bivens* cases decided by [the Supreme Court]").  This court declines to

decide whether "special factors" caution against extending *Bivens* to Williams'

substantive due process claims during screening pursuant to § 1915A, without

briefing by the parties upon either a motion to dismiss or for summary judgment,.

*If* a *Bivens* remedy is available for these claims, due process requires that a

pretrial detainee not be punished prior to a lawful conviction.  *Bell v. Wolfish*, 441

U.S. 520, 535.  The government may detain individuals to ensure their presence at

trial and may subject them to the conditions and restrictions of the detention

---

[10]Williams spent sixty-one days in the SHU during his first administrative detention, and an additional thirty days between the date of his second administrative detention and the date he signed the Complaint.

facility so long as those conditions and restrictions do not amount to punishment. *Id.* at 536-37. Whether a condition of pretrial detention amounts to punishment turns on whether the condition is imposed for the purpose of punishment or whether it is incident to some legitimate government purpose. *Id.* at 538; *Simmons v. Sacramento Cty. Superior Court*, 318 F.3d 1156, 1160-61 (9th Cir. 2003) (a restriction on a pretrial detainee amounts to impermissible punishment if it is not reasonably related to a legitimate governmental objective); *Quiroga v. King*, 738 F. App'x 411 (9th Cir. 2018).

"Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" *Bell*, 441 U.S. at 538-39 (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963)); *see also Demery v. Arpaio*, 378 F.3d 1020, 1030 (9th Cir. 2004). That is, "if a restriction or condition is not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court permissibly may infer that the purpose of the governmental action is punishment." *Bell,* 441 U.S. at 539. An intent to punish on the part of detention facility officials is sufficient to show unconstitutional pretrial punishment. *Id.* at 538; *Hawk*, 2017 WL 3261460, at *3.

17

The facts as alleged here do not show that Defendants punished Williams arbitrarily, without purpose, and without a legitimate penological goal when they housed him in administrative segregation. Williams was moved to administrative segregation while prison officials investigated two serious disciplinary charges: first, for threats Williams allegedly made to correctional officers, and second, for fighting with another inmate, causing that inmate serious injury. "[P]rison officials must have discretion to decide that in some instances temporary, solitary confinement is a useful or necessary means to impose discipline and to protect prison employees and other inmates." *Davis v. Ayala*, 135 S. Ct. 2187, 2210 (Kennedy, J., concurring), *reh'g denied*, 136 S. Ct. 14 (2015).

Moreover, to show that the conditions of confinement in the SHU were inhumane, cruel and unusual, *see Farmer v. Brennan*, 511 U.S. 825, 847 (1994), Williams must allege that: "(I) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved – making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's

18

injuries." *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1125, and n.2 (9th Cir. 2018) (noting that the objective standard that applies to pretrial detainees' medical care claims applies to *all* pretrial detainee conditions of confinement claims) (citing *Darnell v. City of New York*, 849 F.3d 17, 36 (2d Cir. 2017) and *Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016)).

Defendants made an intentional decision to house Williams in segregation, but it is not evident that doing so put Williams at substantial risk of suffering a serious harm of which they were aware and disregarded. The lack of newspapers, television, and extra commissary supplies for the relatively short periods alleged here do not support an inference of cruel and unusual punishment. Similarly, a sink with a moldy spigot that abuts a toilet in a prison cell, bugs in the shower, and stale food, without more, does not objectively support an inference of cruel and unusual punishment.[11]

Finally, Williams' claim for damages based on his placement in the SHU, whether brought under *Bivens* or some other provision, is barred under 42 U.S.C.

---

[11]Temporary, short-term placement in solitary confinement does not normally support a claim for cruel and unusual punishment. *See Davis v. Ayala*, 135 S. Ct. 2187, 2210 (Kennedy, J., concurring) ("Of course, prison officials must have discretion to decide that in some instances temporary, solitary confinement is a useful or necessary means to impose discipline and to protect prison employees and other inmates.").

§ 1997e(e),[12] because he fails to adequately allege any physical injury due to his confinement in the SHU. *See Oliver v. Keller*, 289 F.3d 623, 625-28 (9th Cir. 2002) (the physical injury requirement applies to pre-trial detention claims and requires more than de minimis physical injury); *Jackson v. Monterey Cty. Jail*, 407 F. App'x 119, 119-20 (9th Cir. 2010) (affirming dismissal of pretrial detainee conditions of confinement suit for failure to allege physical injury).

## C.     Williams May Not Represent Other Inmates

Williams brings his claims on behalf of himself and "all inmates housed in FDC Honolulu." Compl., ECF No. 1, PageID #1. A pro se litigant may not bring a class action on behalf of others. *See Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664–65 (9th Cir. 2008) ("As the district court accurately pointed out, courts have routinely adhered to the general rule prohibiting pro se plaintiffs from pursuing claims on behalf of others in a representative capacity."); *Robertson v. Republic of Nicaragua*, 719 F. App'x 705 (9th Cir. 2018) (same). This prohibition "becomes almost absolute when, as here, the putative class representative is incarcerated and proceeding pro se." *Neal v. California*, 2018 WL 4182522 at *7 (E.D. Cal. 2018)

---

[12]42 U.S.C. § 1997e(e), **Limitation on recovery**, states:

No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

(citing cases). Williams cannot assert claims on behalf of other FDC-Honolulu inmates.

## IV.  <u>LEAVE TO AMEND</u>

Williams' Complaint is DISMISSED with leave to amend.  Williams may file an amended complaint on or before November 27, 2018, that cures the deficiencies identified herein.  If he elects to amend his pleading, Williams must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii.  Local Rule LR10.3 requires that an amended complaint be complete in itself without reference to any prior pleading.  An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the court's prisoner civil rights form.  An amended complaint will supersede the preceding complaint.  *See Ramirez v. Cty. of San Bernadino*, 806 F.3d 1002, 1008 (9th Cir. 2015); LR99.7.10.  Defendants not renamed and claims not realleged in an amended complaint may be deemed voluntarily dismissed.  *See Lacey v. Maricopa Cty*, 693 F.3d 896, 928 (9th Cir. 2012).

//

//

## V.  28 U.S.C. § 1915(g)

If Williams fails to file an amended complaint, or is unable to amend his claims to cure their deficiencies, this dismissal may count as a "strike" under 28 U.S.C. § 1915(g).  Under this "3-strikes" provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis under 28 U.S.C. § 1915,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## VI.  CONCLUSION

(1)  The Complaint is DISMISSED for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1).

(2)  Williams may file an amended pleading that cures the noted deficiencies in his claims on or before November 27, 2018.

(3)  The Clerk is directed to sent Williams a blank prisoner civil rights complaint form so that he can comply with this order if he elects to file an amended pleading.

(4) If Williams fails to timely amend his pleadings and cure the deficiencies noted herein, this action may be AUTOMATICALLY DISMISSED without further notice, and he may incur a strike pursuant to 28 U.S.C. § 9115(g).

IT IS SO ORDERED.

DATED: October 22, 2018 at Honolulu, Hawaii.



/s/ Derrick K. Watson
Derrick K. Watson
United States District Judge

-------------------------------------------------------------------------------------------------

*Anthony Williams v. Warden Kobayashi, et al.*; Civil No. 18-00336 DKW-RLP;
**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND**

*Williams v. Kobayashi.*, 1:18-cv-00336 DKW-RLP; Order Dismissing Complaint With Leave Granted to Amend; scrn '18 Williams 18-336 DKW (Bivens pretrial 1st & 5th Amd.)