# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ANTHONY TROY WILLIAMS, FED. #05963-122, | ) ) | CIV. NO. 1:18-cv-00336 DKW-RLP |
| | ) | ORDER DISMISSING FIRST |
| Plaintiff, | ) | AMENDED COMPLAINT WITH |
| | ) | LEAVE TO AMEND |
| vs. | ) | |
| | ) | |
| HIROMICHI KOBAYASHI, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Before the court is pro se Plaintiff Anthony Troy Williams' First Amended

Complaint (FAC). ECF No. 6. Williams is a pretrial detainee incarcerated at the

Federal Detention Center, Honolulu (FDC-Honolulu).[1] Williams alleges that

Defendants[2] violated his rights under the First, Fifth, and Fourteenth Amendments

when they allegedly denied him equal protection of the law, due process, and the

free exercise of his religion.

For the following reasons, the FAC is DISMISSED for failure to state a

colorable claim for relief. *See* 28 U.S.C. § 1915A(a-b). Williams may file an

---

[1]Williams is awaiting trial in *United States v. Williams*, No. 1:17-cr-00101-LEK (D. Haw. 2017). He is representing himself with standby counsel.

[2]Williams names FDC-Honolulu Warden Hiromichi Kobayashi, Associate Wardens Kyle Olsen and Annelizabeth Card, and Captain Jeffrey Dixon in their official and individual capacities.

amended pleading as limited below to correct the deficiencies in claims dismissed herein without prejudice, on or before February 5, 2019.

## I. SCREENING

The court is required to screen the FAC, pursuant to 28 U.S.C. § 1915A(a), and dismiss claims that are frivolous, malicious, or fail to state a claim for relief, or that seek damages from defendants who are immune from suit. *See Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing dismissal of prisoner suits under § 1915A(b)).

Section 1915 screening involves the same standard of review as that under Federal Rule of Civil Procedure 12(b)(6). *See Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). That is, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Rule 12(b)(6) is read in conjunction with Rule 8(a). *Zixiang Li v. Kerry*, 710 F.3d 995, 998-99 (9th Cir. 2013). Under Rule 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but a complaint

must allege enough facts to provide both "fair notice" of the claim asserted and "the grounds upon which [that claim] rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & n.3 (2007) (citation and quotation marks omitted); *see also Iqbal*, 556 U.S. at 555 (stating Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). The "mere possibility of misconduct" does not meet this standard. *Iqbal*, 556 U.S. at 555; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Pro se litigants' pleadings must be liberally construed, and all doubts should be resolved in their favor. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). The court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). If a claim or complaint cannot be saved by amendment, dismissal with prejudice is appropriate. *Sylvia Landfield Tr. v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.  CLAIMS[3]

In Count I, Williams alleges that Warden Kobayashi retaliated against him by (1) denying his personal minister's application for "special visitor as a minister"

---

[3]Williams' statement of fact is accepted as true and construed in the light most favorable to him. *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

status, and (2) removing her from Williams' approved visitors list.  FAC, ECF No. 6, PageID #63.  Williams says the FDC-Honolulu chaplain had verified her credentials as a minister, she had passed a background check, and she had been allowed to visit him between December 2017 and February 2018.  Williams claims this violated his right to freely exercise his religion under the First Amendment. *See id.*

In Count II, Williams alleges that Captain Dixon retaliated against him by delaying his outgoing and incoming emails for three to ten days after Williams "took the FDC to court," in contrast to other inmates' emails, which are relayed within several hours.  *Id.*, PageID #64.  Williams claims this delay interferes with his ability to communicate with his attorney, family, and friends, and caused him to miss unidentified motions deadlines.  Williams alleges this violated his right to equal protection under the Fourteenth Amendment.

In Count III, Williams alleges that (1) his incoming and outgoing legal mail is opened outside of his presence, and (2) he is denied legal materials from outside of the prison.  *See id.*, PageID #65.  Williams names no Defendants within this claim, but alleges elsewhere that Associate Warden Card "prevented my legal mail from being mailed out and ordered my legal mail to be opened outside of my

presence" when he named her as a Defendant. *Id.*, PageID #60. Williams claims this violated his right to due process under the Fifth Amendment.

Williams brings his claims pursuant to 42 U.S.C. § 1983, *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), and the "Common law." *See* FAC, ECF No. 6, PageID #59. He seeks prospective injunctive relief only.

## III. <u>DISCUSSION</u>

As a preliminary matter, the court will not refer to the original Complaint or incorporate its statements of fact into the FAC to determine whether Williams' allegations state a claim or adequately identify the Defendants' connection to his claims.[4] Local Rule (LR) 10.3 states:

> Any party filing or moving to file an amended complaint, counterclaim, third-party complaint, or answer or reply thereto shall reproduce the entire pleading as amended and may not incorporate any part of a prior pleading by reference, except with leave of court.

LR10.3. The original Complaint was dismissed on October 22, 2018, and it is now superceded by the FAC, which must stand on its own. The court will not ignore inconsistencies or omissions between the two pleadings, but to the extent Williams moves to incorporate by reference the original Complaint, his motion is DENIED.

### A. **Claims Against Defendant Olsen are Dismissed**

_____

[4]The FAC purports to direct the court to review the original Complaint, attached as an exhibit to the FAC, for "details [of] what each defendant did." FAC, ECF No. 6, PageID #60.

Under the Federal Rules of Civil Procedure, pleadings must contain a "short and plain statement" of the court's jurisdiction that shows the plaintiff is entitled to relief, and a demand for the relief sought. Fed. R. Civ. P. 8(a). Claims must be set forth simply, concisely, and directly in a manner that gives the defendant fair notice of the claims alleged. *See* Rule 8(c)(1) and (d)(1). Thus, a complaint must allege in specific terms how each named defendant is involved and set forth an affirmative link between each defendant's actions and the claimed deprivation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Williams names Associate Warden Olsen as a Defendant in the caption of the FAC but alleges no claims against him or facts showing Olsen's involvement in his claims. Williams either is unable to cure his claims against Olsen or he has voluntarily abandoned them, and these claims are DISMISSED with prejudice.

**B.  42 U.S.C. § 1983**

Williams cannot maintain a suit under 42 U.S.C. § 1983, unless Defendants were acting under color of state law.  *See* Order Dismissing Complaint With Leave to Amend (October 22, 2018 Order), ECF No. 5, PageID #42 (citing *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011), and *Lugar v. Edmondson Oil Co. Inc.*, 457 U.S. 922, 937 (1982)).  The FAC does not support an inference that Defendants are state actors and claims alleged under § 1983 are DISMISSED with prejudice.

**C.  *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics***

*Bivens* actions and § 1983 actions "are identical save for the replacement of a state actor under § 1983 by a federal actor under *Bivens*."  *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir.1991).  *Bivens* provides a damages action against federal officers in their individual capacity for their constitutional violations.  *See Bivens*, 403 U.S. at 397.  *Bivens* does not encompass injunctive and declaratory relief that requires official government action.  *Solida v. McKelvey*, 820 F.3d 1090, 1093-94 (9th Cir. 2016) (citing *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) ("The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities.") and *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005) ("[A] *Bivens* claim lies

against the federal official in his individual capacity – not, as here, against officials in their official capacity.")); *Lee v. Matevousian*, 2018 WL 5603593, at *2 (E.D. Cal. Oct. 26, 2018).

Williams seeks prospective injunctive relief only, requiring FDC-Honolulu officials to: (1) sign and timely deliver his incoming and outgoing legal mail; (2) allow him to receive outside "legal materials;" (3) forward his emails within three hours; (4) allow his personal minister to visit three times a week and provide him religious materials; and (5) print copies of his discovery documents and motions. *See* FAC, ECF No. 6, PageID #66 ("Request for Relief"). *Bivens* does not apply to Williams' claims for prospective injunctive relief, and such claims are DISMISSED with prejudice.

## D.    Injunctive Relief

Prisoners may seek prospective injunctive relief as one means to correct the violation of a Federal right and alter unconstitutional policies. *See* 18 U.S.C. § 3626(a)(1);[5] *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (holding

---

[5] Section 3626(a)(1), which applies to prisoner claims for injunctive relief, also states:

The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system

(continued...)

injunctive relief is available for a prisoner's retaliation claim); *Solida*, 820 F.3d at

1096 (noting a waiver of sovereign immunity under the Administrative Procedure

Act, 5 U.S.C. § 702, for injunctive relief).

     *1.     Count I:  Free Exercise of Religion and Retaliation*

     An inmate's First Amendment right to freely exercise his religion is

necessarily restricted by his incarceration.  *O'Lone v. Estate of Shabazz*, 482 U.S.

342 (1987).  Inmates do not have the right to a particular clergyman of their choice,

and there is no violation when a particular clergyman is terminated from visitation.

*Reimers v. Oregon*, 863 F.2d 630, 632 (9th Cir.1988); *Allen v. Toombs*, 827 F.2d

563, 569 (9th Cir. 1987).  Nor are prison officials required to provide a religious

advisor for every sect represented in a particular facility.  *Cruz v. Beto*, 405 U.S.

319, 322 n.2 (1972) (*per curiam*); *Blair-Bey v. Nix*, 963 F.2d 162, 163-64 (8th Cir.

1992).  To comply with the Free Exercise Clause, prison officials must simply

allow prisoners a reasonable opportunity to exercise their religious freedom.  *Beto*,

405 U.S. at 322 n.2.  "Only when a prisoner's sole opportunity for group worship

arises under the guidance of someone whose beliefs are significantly different from

his own is there a possibility that the prisoner's free exercise rights are

---

    [5](...continued)
caused by the relief.

substantially burdened in this manner." *Weir v. Nix*, 114 F.3d 817, 821 (8th Cir.1997) (citing *SapaNajin v. Gunter*, 857 F.2d 463, 464 (8th Cir.1988)).

Williams has no right to thrice-weekly visits from his personal minister, nor is she constitutionally entitled to a special visitor pass. Williams provides no other context to this claim or explain why he is unable to practice his faith or freely exercise his religion without visits from his personal minister.

To the extent that Williams alleges Warden Kobayashi retaliated against him by denying the special visitor pass and terminating his personal minister's visitation rights, he fails to state a claim. To state a viable First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in protected conduct; (2) a state actor took an adverse action against him; (3) the adverse action was "because of" his protected conduct; (4) the adverse action chilled the exercise of his First Amendment rights; and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

Williams alleges no facts showing that Kobayashi denied his minister visitation at FDC-Honolulu *because* of Williams' protected activity, or that this chilled Williams' First Amendment rights, or that it was unrelated to a legitimate correctional goal.

Williams fails to state a First Amendment free exercise or retaliation claim against Warden Kobayashi, and Count I is DISMISSED with leave to amend.[6]

## 2.    *Count II:  Equal Protection*

Williams alleges Captain Dixon delayed his emails for three to ten days, when other inmates' emails were promptly delivered, to retaliate against Williams for taking "the FDC to court."  FAC, ECF No. 6, PageID #64.  Williams claims this violated his right to equal protection under the Fourteenth Amendment.

As a federal prisoner, Williams' equal protection claim arises under the Fifth, not the Fourteenth Amendment.  *United States v. Windsor*, 570 U.S. 744, 774 (2013) ("The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws."); *United States v. Navarro*, 800 F.3d 1104, 1112 n.6 (9th Cir. 2015).  The Supreme Court's "approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment."  *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975).

---

[6]District Judge Leslie E. Kobayashi affirmed the magistrate judge's determination that Williams "is allowed visitors pursuant to standard BOP policy," on the same date that Williams commenced this action.  *See U.S. v. Williams*, No. 1:17-cr-00101-1 LEK, Order, ECF No. 310, PageID #3119 (D. Haw. Sep. 5, 2018) (granting appeal of magistrate order granting Motion to Compel). Williams does not allege that the denial of his personal minister's request for special visitor rights violates prison policy.

A prisoner may establish an equal protection claim by alleging plausible facts showing that a defendant intentionally discriminated against him based on his membership in a protected class. *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 702-03 (9th Cir. 2009). Or he may establish an equal protection claim by showing that he was intentionally treated differently than other similarly-situated inmates without a rational relationship to a legitimate governmental purpose. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601-02 (2008) (discussing the "class of one" theory of discrimination) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)); *see also Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008); *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

Inmates are not a protected class, *Mayner v. Callahan*, 873 F.2d 1300, 1302 (9th Cir. 1989), and they are not necessarily similarly situated simply because they are incarcerated at the same facility. There are several conceivable, legitimate reasons suggested by Williams' pleadings that explain why his email is delayed at times, such as his admitted discipline for the content of earlier emails. *See* Compl., ECF No. 1 (alleging Williams was charged for inflammatory statements in an email in February 2018). The BOP may monitor inmate telephone calls and emails "to preserve the security and orderly management of the institution and to protect

the public," as long as the inmates are notified, and this could also be the cause of delay. *See* 28 C.F.R. § 540.102. Williams alleges no facts, however, showing that other inmates who allegedly promptly receive their emails are similarly situated to him.

Moreover, there is no free-standing violation for a delay in email or other communication, as long as Williams has alternative means to communicate with others, such as by written communication, visitation, and telephone. *See, e.g.*, *Valdez v. Rosenbaum*, 302 F.3d 1039, 1048-49 (9th Cir. 2002) ("Valdez had alternative means . . . to communicate with persons outside the prison walls. He could receive visitors at the jail . . . [and] could also communicate . . . by telephone."); *Turner v. Safley*, 482 U.S. 78, 89-90 (1987) (upholding prison policy restricting inmate-to-inmate communication based on the rational relationship of the prison regulation to institutional security). The court is unable to locate any case finding that inmates have a constitutional right to communicate by email when other means are available.

Williams fails to state a colorable equal protection claim against Dixon, and that claim is DISMISSED with leave to amend.

3.  *Count II:  Retaliation*

Williams also alleges Dixon delayed his emails in retaliation, "[s]ince I took the FDC to court." FAC, ECF No. 6, PageID #64. As noted above, a viable retaliation claim must show that the defendant took an adverse action against the prisoner *because of* the prisoner's protected conduct, that adverse action chilled plaintiff's exercise of First Amendment rights, and did not reasonably advance a legitimate correctional goal. *Rhodes*, 408 F.3d at 567-68.

Williams says that he filed complaints and administrative grievances regarding his delayed emails and raised this issue to Magistrate Judge Puglisi in his criminal proceedings. Williams also filed a "Motion for Injunction Against FDC for Retaliation" in 1:17-cr-00101-LEK on January 17, 2018, complaining about his delayed email.[7] *See id.*, ECF No. 87. These instances of protected conduct occurred *after* Dixon allegedly began delaying Williams' emails. Williams fails to allege the date that he "took the FDC to court," and the date that Dixon began

---

[7]Judge Kobayashi denied Williams' Motion for Injunction, concluding that he "is being provided with reasonable access to legal resources in light of the competing penological considerations presented by his confinement." Order, ECF No. 346, PageID #3275 (dated 10/02/2018). Regarding Williams' delayed emails and other requests for injunctive relief, however, Judge Kobayashi stated:

> [T]o the extent [Williams] wishes to pursue those requests, he must follow the appropriate administrative procedures and/or file a civil rights action or a 18 U.S.C. § 2241 petition. This Court makes no findings or conclusions about the other requests in the Motion for Injunction and expresses no opinion regarding whether an administrative complaint or appeal, a civil rights action or a § 2241 petition would have merit.

*Id.*

delaying his emails, to show a plausible chronological connection between these two events to support a retaliation claim. Thus, Williams fails to plausibly allege that Dixon took an adverse action against him because of his protected conduct.

It is also unclear what chilling effect the delayed emails had on Williams' First Amendment rights, since Williams grieved Dixon's actions, raised the delayed emails in his criminal case, and brought this suit. But an inmate need only demonstrate that the conduct "would chill or silence a person of ordinary firmness from future First Amendment activities," and Williams' allegations that his communication with his attorney and others was harmed and he "missed motions being filed," are sufficient to show that he "suffered some other harm" as a retaliatory adverse action. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (citing *Rhodes*, 408 F.3d at 567 n.11).

However, Williams bears the burden of *pleading* and proving the absence of legitimate correctional goals for a defendant's challenged retaliatory conduct. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (stating, "a successful retaliation claim requires a finding that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals") (citations and internal quotation marks omitted). Williams does not address the lack of correctional goals, and as

previously noted, Williams' pleadings and circumstances suggest there are legitimate reasons for FDC-Honolulu officials to monitor his emails, which would result in a delay, including Williams' admission that he was disciplined for the content of his earlier emails. Williams fails to state a plausible retaliation claim against Dixon, and this claim is DISMISSED with leave to amend.

### 4. Count III: Legal Mail

Williams alleges his "legal mail" was opened outside of his presence and that he was denied "legal materials" sent from outside of FDC-Honolulu. FAC, ECF No. 6, PageID #65. He says this caused him to miss deadlines, prevented him from contacting the "news media," and hindered him from advancing his case and seeking outside help. *Id.*

### a. Opening Williams' Legal Mail

"[P]risoners have a protected First Amendment interest in having properly marked legal mail opened only in their presence." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir. 2017); *see also Mangiaracina v. Penzone*, 849 F.3d 1191, 1196–97 (9th Cir. 2017) (the Sixth Amendment requires a pretrial detainee to be present when legal mail related to a criminal matter is inspected). Prison officials may "open and inspect – but not read – legal mail sent to an inmate." *Nordstrom*, 762 F.3d at 909 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 577

(1974) ).  Mail to and from a court or other government agency is not "legal mail,"

however.  *See O'Keefe v. Van Boening*, 82 F.3d 322, 326 (9th Cir. 1996) (a prison

need not treat all mail sent to/from government agencies and officials as legal

mail); *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996) (concluding that mail

from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail),

*amended by* 135 F.3d 1318 (9th Cir. 1998); *Mann v. Adams*, 846 F.2d 589, 590-91

(9th Cir. 1988) (*per curiam*) (holding mail from public agencies and officials, civil

rights groups, and the news media is not legal mail and may be opened outside

prisoners' presence).

To assert a plausible First Amendment claim regarding opening legal mail

outside of the inmate's presence, an inmate must allege facts showing that the mail

was properly marked as legal mail.  *Hayes*,  849 F.3d at 1211 (affirming dismissal

of claim when prisoner "did not clarify who sent the mail or whether it was

properly marked as 'legal mail'"); *Wolff*, 418 U.S. at 576 (stating that legal mail

must "be specially marked as originating from an attorney, with his name and

address being given, if [it is] to receive special treatment"*)*.

Williams does not identify what incoming or outgoing mail was opened

outside of his presence, clarify to or from whom such mail was sent or received, or

allege that this mail was properly marked as legal mail.  Without these facts,

Williams fails to state a claim. Moreover, mail to the news media, public or private agencies, the court, or to attorneys who are not representing Williams and are not on his approved attorney list is not legal mail. *See O'Keefe*, 82 F.3d at 326 (a prison need not treat all mail sent to/from government agencies and officials as legal mail); *Keenan*, 83 F.3d at 1094. Williams fails to state a colorable claim in Count III for opening his legal mail outside of his presence, and this claim is DISMISSED with leave to amend.

      b.    <u>Interference With Access to the Court</u>

Williams also alleges he is denied legal materials from outside of the prison and that prison officials failed to mail several motions to the court and to his standby attorney, causing him to miss deadlines.

"Prisoners have a constitutional right of access to the courts." *Silva v. Di Vittorio*, 658 F.3d 109, 1101 (9th Cir. 2011) (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). This right includes the right to be free from government interference and "the right to file other civil actions in court that have a reasonable basis in law or fact." *Id.* at 1102 (citing, inter alia, *McDonald v. Smith*, 472 U.S. 479, 484 (1985)). This right prevents the state from "erect[ing] barriers that impede the right of access of incarcerated persons." *Id.* at 1102-03 (citations and internal quotation marks omitted). To state a denial of access to the court, a prisoner must

show that he suffered an "actual injury" from a "specific instance" where he was denied such access. *Lewis v. Casey*, 518 U.S 343, 349 (1996); *Sands v. Lewis*, 886 F.2d 1166, 1171 (9th Cir. 1989). That is, a claim for deprivation of the right of access to the courts must allege both the underlying cause of action, whether that action is merely anticipated or already lost, and the official acts that frustrated the litigation. *Christopher v. Harbury*, 536 U.S. 403, 415-16 (2002).

Williams alleges no facts showing that he was denied access to the court. If he refers to missing deadlines in his criminal case, and this is not explicit, he fails to explain what deadlines were missed and the injury he incurred from missing these deadlines. Moreover, Williams is represented by standby counsel in No. 1:17-cr-00101 LEK, who is tasked with preventing missed deadlines and protecting Williams' right to represent himself and to a fair trial.

If he refers to the present action, Williams has missed no deadlines or suffered any loss to his right to present claims that have a reasonable basis in law or fact. Williams fails to allege any colorable denial of access to the court claims, and such claims are DISMISSED without prejudice.

## IV.  LEAVE TO AMEND

The FAC is DISMISSED with leave granted to amend only those claims that are dismissed without prejudice. This is not an invitation to expand Williams'

claims.  If Williams seeks to add new claims, without an explanation regarding

how those claims relate back to the claims alleged in the original Complaint, he

must seek leave to do so. Williams may file an amended complaint on or before

February 5, 2019 that cures the deficiencies noted above.  He must comply with the

Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii,

particularly LR10.3, which requires an amended complaint to be complete in itself

without reference to any prior pleading.  An amended complaint must be short and

plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be

submitted on the court's prisoner civil rights form.  An amended complaint will

supersede the preceding complaint.  *See Ramirez v. Cty. of San Bernadino*, 806

F.3d 1002, 1008 (9th Cir. 2015); LR99.7.10.  Defendants not renamed and claims

not realleged in an amended complaint may be deemed voluntarily dismissed.  *See*

*Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012).

## V.  28 U.S.C. § 1915(g)

If Williams fails to file an amended complaint or fails to cure the deficiencies in his claims, this dismissal may count as a "strike" under 28 U.S.C. § 1915(g).  Under this "3-strikes" provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis under 28 U.S.C. § 1915,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## VI.  CONCLUSION

(1)  The First Amended Complaint is DISMISSED for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1).

(2)  Williams may file an  amended pleading that cures the noted deficiencies in his claims on or before February 5, 2019.  Williams may not add new claims or Defendants or expand his claims beyond those alleged when he commenced this action without permission from the court.

(3)  The Clerk is directed to send Williams a blank prisoner civil rights complaint form so that he can comply with this order.

(4)  If Williams fails to timely amend his pleadings and cure its deficiencies,

this action may be AUTOMATICALLY DISMISSED.

IT IS SO ORDERED.

DATED: January 3, 2019 at Honolulu, Hawaii.



/s/ Derrick K. Watson
Derrick K. Watson
United States District Judge

---

*Anthony Troy Williams v. Hiromichi Kobayashi, et al.;* Civil No. 18-00336 DKW-RLP; **ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND**

*Williams v. Kobayashi.,* 1:18-cv-00336 DKW-RLP; scrn '18 Williams 18-336 dkw (FAC, Bivens 1A religion acc. ct. mail, 5A DP)